NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | Criminal Action No. 15-242 (ES) |
| v. | : | |
| | : | **MEMORANDUM OPINION** |
| KEITH HARRELL, | : | |
| Defendant. | : | |

Before the Court is Defendant Keith Harrell's motion to suppress, (D.E. No. 11), the Government's opposition, (D.E. No. 12), and the parties' supplemental briefing, (D.E. Nos. 15 & 20). On March 17, 2016, the Court held a hearing on Harrell's motion that was, for the most part, evidentiary in nature.[1] Based on the Court's factual findings and conclusions discussed below, the Court DENIES Harrell's motion to suppress.

The Government brought this prosecution against Harrell, alleging that Harrell—a convicted felon—was found with a handgun in violation of 18 U.S.C. § 922(g)(1). (D.E. No. 1). Harrell moved to suppress evidence (i.e., the handgun) that was found after his February 18, 2015 arrest by two officers from the Metro Division of the Newark Police Department (the "Newark Police"). (D.E. No. 11-1 at 2; D.E. No. 20 at 2). The police report shows that the arresting officers were Officers Spellman and Gilbert. (Hrg. Exh. 1).

When Harrell moved to suppress, he declared that, "[c]ontrary to what is set forth in the police report, at the time of my arrest I was not smoking marijuana, nor did I have a marijuana

---

[1] The parties agreed that an evidentiary hearing was necessary in light of disputed issues of material fact. (*See, e.g.*, D.E. No. 12 at 5 n.4; D.E. No. 20 at 3).

cigarette in my hand." (D.E. No. 11-3 ¶ 5). The Government disputed this account, (D.E. No. 12), and later supplemented the record with open arrest warrants that had been issued *before* Harrell's February 18 arrest, (D.E. No. 15). Harrell does not dispute the validity of these warrants, but argues that the February 18 arrest was not made with knowledge of these warrants. (*See* D.E. No. 20 at 3; 3/17/16 Tr. at 4:14-16; *see also* Hrg. Exhs. 4-6). Further, Harrell maintains that the police officers had no basis for an investigatory stop—under *Terry v. Ohio*, 392 U.S. 1, 30 (1968)—relating to marijuana use. (*See* D.E. No. 20 at 2-3; 3/17/16 Tr. at 114:11-22, 115:10-25).

### I. The parties dispute who has the burden of proof

As an initial matter, the parties contest who owns the burden of proof. The Government argues that the burden is on Harrell because there are arrest warrants; Harrell argues that the burden is on the Government because the Government's initial opposition put certain facts—that did not involve any warrants—into dispute for an evidentiary hearing and only later did warrants surface. (*E.g.*, 3/17/16 Tr. at 3:21-23, 4:2-14, 5:15-22, 106:20-108:8, 114:9-115:9).[2]

"The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated." *United States v. Acosta*, 965 F.2d 1248, 1256 n.9 (3d Cir. 1992). If a search is conducted without a warrant, the burden "shifts" to the Government to show "by a preponderance of the evidence that the warrantless search did not run afoul of the Fourth Amendment." *United States v. Graham*, No. 13-626, 2014 WL 3396495, at *4 (D.N.J. July 9, 2014) (citing *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995)).

---

[2] Indeed, the Government's initial opposition to Harrell's motion to suppress implicated two exceptions to the warrant requirement: (1) the officers conducted a valid investigatory stop of Harrell (i.e., a *Terry* stop), which ultimately led to his arrest and discovery of the gun; and (2) the officers lawfully seized the marijuana cigarette under the plain-view doctrine and arrested Harrell for possession of a controlled substance. (*See* D.E. No. 12 at 2 n.1, 6-13). But the Government explains that, when it initially opposed Harrell's motion, it was unable to "confirm or deny" whether there was a warrant for Harrell's arrest, and it was only in February 2016 that the Government actually obtained copies of three open arrest warrants. (D.E. No. 15 at 2).

The Court concludes that—even accepting Harrell's contention that the burden rests with the Government—his suppression motion must be denied because the Government has shown by a preponderance of the evidence that the Newark Police officers' conduct did not violate the Fourth Amendment.

## II.    The police officers had a basis to seize Harrell pursuant to at least one indisputably valid arrest warrant

Harrell contests the basis to stop and seize him. (*See* D.E. No. 11-1 at 3-4; D.E. No. 20 at 3; 3/17/16 Tr. at 114:11-15, 115:5-8, 120:14-18). As noted, Harrell does not contest the validity of the arrest warrants; rather, he contests whether the arresting officers knew about the warrants before they arrested him. (D.E. No. 20 at 3; 3/17/16 Tr. at 4:12-16, 120:11-18). In particular, Harrell contests whether "Officer Spellman was aware that Mr. Harrell had open arrest warrants at the time of his stop and seizure." (D.E. No. 20 at 3).

At the Suppression Hearing, Officer Spellman testified in person.[3] Having considered her demeanor, her ability for recollection, and her entire testimony, the Court finds that Officer Spellman:

(1) knew who Harrell was from her prior interactions with him, (3/17/16 Tr. at 16:8-24, 32:21-33:2, 43:14-16, 44:6-12);

(2) had no prior animus toward Harrell, (*id.* at 30:24, 31:5-25, 33-3:7, 44:6-12, 44:20-45:1), which Harrell himself appeared to validate, (*id.* at 93:20-94:10, 97:4-6);

(3) knew that Harrell had at least one open arrest warrant immediately preceding his February 18 arrest, (3/17/16 Tr. at 19:17-20:15, 47:7-16, 58:23-59:1); and

---

[3] The Court and Harrell were made aware through confidential submissions—with supporting documentation—that Officer Gilbert has serious medical issues and is on non-active duty until at least June 1, 2016. (*See* 3/15/16 Status Conf. Tr. at 10:23-11:4). Accordingly, Harrell reserved his right to ask that the Court hold Harrell's motion to suppress in abeyance pending Officer Gilbert's recovery and to call Officer Gilbert at a later time to testify in support of his motion. (*Id.* at 11:19-12:12, 16:17-18). Harrell, however, did not make any such request at or after the Suppression Hearing—and, in fact, stated that he had no additional witnesses at the conclusion of the evidentiary portion of the March 17 hearing. (3/17/16 Tr. at 104:18-20).

(4) sought to seize him, at least in part, because of at least one warrant, (*id.* at 19:11-20, 57:6-14).

To be sure, the Court finds that the lack of reference to any warrant in the police report, (Hrg. Exh. 1), does not undermine these findings. Nor does the Court find that Officer Spellman's apparent lack of knowledge about a Department of Justice report that was unfavorable, at least in part, to the Newark Police Department, (Hrg. Exh. 21), undermine her credibility or veracity about the events that transpired on February 18. In so finding, the Court has factored in Officer Spellman's overall experience as an officer with the Newark Police Metro Division since 1993, her demeanor while on the stand, and her overall testimony, including her testimony regarding the police report. (*See* 3/17/16 Tr. at 7:16-9:11, 37:24-38:4, 38:16-39:19, 42:6-43:13, 48:6-13, 53:24-54:17, 54:25-55:17).[4]

And the Court does not give Officer Spellman credibility simply because she is a law enforcement officer. If anything, the Court affords particular weight to the lack of animus from Officer Spellman towards Harrell before his February 18 arrest. In fact, Harrell himself testified that he has known Officer Spellman for years, she had never arrested him before February 18, and he usually has no problems with her. (*Id.* at 93:20-94:10, 102:4-22). Further, both Harrell and a lay witness Harrell called to testify on his behalf—a security guard working at the location of the February 18 arrest—heard the two arresting officers reference a warrant. (D.E. No. 11-3 ¶ 6; 3/17/16 Tr. at 63:5-24, 65:6-9, 65:19-22, 73:2-8, 82:19-21).

Given these findings, the Court concludes that Officer Spellman was aware that Harrell had at least one open arrest warrant before conducting the February 18 stop and seizure.

---

[4] *See Graham*, 2014 WL 3396495, at *4 ("[O]n a motion to suppress evidence, it is the trial court that determines the credibility of witnesses. . . . In particular, credibility determinations are to be made in consideration of numerous factors, including the witness's demeanor and manner while on the stand, the witness's ability to accurately recollect the matters at hand and, ultimately, the extent to which the testimony withstands a common sense test of reason and logic." (textual modifications, citations, and quotations marks omitted)).

### III. The police officers conducted a valid *Terry* stop

The Supreme Court has "held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio,* 392 U.S. 1, 30 (1968)). To make "reasonable-suspicion determinations," courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)).

Harrell admits that he was under the influence—and had possession—of marijuana and "mollies" at the time of his arrest. (3/17/16 Tr. at 83:10-84:3, 92:24-93:8). But he disputes a critical fact to counter the Government's *Terry* stop argument: whether the Newark Police "did in fact stop and seize Mr. Harrell because they observed him violating the law by smoking a marijuana cigarette or for some other, improper, reason." (D.E. No. 20 at 3; *see also* 3/17/16 Tr. at 104:9-11 ("Q. [Y]ou were not smoking at the time you were in the area of [the arrest] that day? [Harrell]. No.")).

Having considered Officer Spellman's demeanor, her ability for recollection, and her entire testimony, the Court finds that she:

(1) knew the area where Harrell was arrested on February 18 to be a high-crime area, involving drug-related activity, (3/17/16 Tr. at 10:16-11:11), which Harrell's own lay witness appeared to confirm, (*see id.* at 66:11-15, 67:11-22, 70:4-15);[5]

(2) observed from her patrol car—in the area where Harrell was immediately before his arrest—"a group of males there and it looked like there was more people there than

---

[5] The Court has factored in the basis for Officer Spellman's long-time familiarity with this location. (*See* 3/17/16 Tr. at 7:16-9:11, 32:6-13).

normally at that corner, engaged in something that appeared to be the smoking of marijuana," (*id.* at 45:12-17; *see also id.* at 17:23-18:4, 46:10-47:6);

(3) suspected marijuana use based, at least in part, on the way she observed the males handling the item being smoked (when juxtaposed with her knowledge of cigar use), (*id.* at 17:23-18:4, 18:13-19:10);

(4) credibly recounted that, before approaching Harrell, "it looked like" the males were "passing a marijuana cigarette [] or something, but when he dropped his hand down and all the other men left," it made her "suspicious of what they were doing," (*id.* at 17:23-18:4; *see also id.* at 17:18-20, 18:15-18, 19:11-14); and

(5) smelled burned marijuana (after exiting the patrol car) coming from the area where Harrell was standing and, later, observed that Harrell smelled like marijuana, based on her past experience receiving complaints and making arrests for marijuana use, (*id.* at 14:4-25, 17:16-18:10, 31:2-3).

The Court agrees with the Government that the testimony of Harrell's lay witness—the security guard—does not undermine these findings. (*See id.* at 112:17-114:6). Nor does the existence of a Department of Justice report that was unfavorable, at least in part, to the Newark Police Department, (Hrg. Exh. 21), undermine these findings. After all, there is no evidence that this report applies in particular to either Officer Spellman or Officer Gilbert. And, as noted above, the Court finds that Officer Spellman's apparent lack of knowledge about the Department of Justice report does not undermine her credibility and account about the events that transpired on February 18.

The Court makes the above findings given the totality of the circumstances presented—

including Officer Spellman's experience and personal observation of suspicious behavior, as well as Harrell's admission that he was under the influence at the time of his arrest. *See United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002) (citing Supreme Court precedent and explaining that "a reasonable suspicion may be the result of any combination of one or several factors," including "specialized knowledge and investigative inferences," as well as "personal observation of suspicious behavior"). Accordingly, the Court finds that there was a reasonable, articulable suspicion that criminal activity was possibly afoot—and that this suspicion was supported by a particularized and objective basis. Thus, an investigatory stop of Harrell was justified.

**IV.   Conclusion**

In sum, the Court finds that the stop and seizure of Harrell was proper based on Officer Spellman's knowledge of at least one open arrest warrant, the suspicion of marijuana use or possession, or a combination of these two bases.[6] An appropriate Order accompanies this Memorandum Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[6] Given the findings and conclusions herein, the Court need not reach the Government's plain-view doctrine argument. (*See* D.E. No. 12 at 9-12). Further, the Court notes that—although Harrell himself indicated that there may be an issue regarding his counsel's continued representation (in a letter dated March 14, 2016, but received by the Court *after* both the March 15 Status Conference and the March 17 Suppression Hearing)—the Court verified that Harrell did not intend to dismiss his counsel. (*See* 3/30/16 Tr. at 3:20-4:16).